IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABRAHAM WILLIAMS, (#R57566), | ) |
| Petitioner, | ) ) |
| | ) Case No. 16 C 7421 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| RANDY PFISTER, Warden Stateville Correctional Center, | ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Pro se Petitioner Abraham Williams petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Williams' habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sims v. Hyatte*, 914 F.3d 1078, 1095 (7th Cir. 2019). Since Williams failed to provide clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions.

*Factual Background*

At Williams' murder trial, Alvester Morman testified that on December 1, 2003 around 1 p.m., she was on the second floor of her home on Maypole Street in Chicago when she heard a crash and gunshots outside. When she looked out her front window, she saw that a car had hit three parked cars and then came to a stop. Thereafter, a man got out of the car and ran. At the same time, Morman saw two men exit a white van and shoot at the man who ran from the car. The running man tripped, and the men from the van continued to shoot at him. The driver of the van

looked at Morman in her window and she saw his face. On January 16, 2004, Morman viewed a line-up at the Chicago Police Department Area 4 Headquarters. She identified Williams as the driver of the van and as one of the men she saw shooting at the victim. At trial, Morman made an in-court identification of Williams.

Two other individuals saw the shooting while they were parked in separate cars on Maypole Street on December 1, 2003 at around 1 p.m. One of the individuals, Ben Trapp, testified that he was talking on his cell phone when he heard gunshots. He then looked in his rearview mirror and saw a white van following a four-door sedan. People in the van were shooting at the car. Shortly after, Trapp saw the car hit a parked car and a man run out of the car. The van then stopped, and two men got out chasing the victim. Trapp testified that the victim fell to the ground after being shot.

Another eyewitness, Ann Griffin, testified that while she was double-parked on Maypole, she heard gunshots and saw a car followed by a white van. A passenger in the van was leaning out of the window and was pointing a gun at the car. She heard gunshots and fell to the floor of her car. She then heard a crash and more gunfire. Later, Chicago police took Griffin to another street to identify the van, which she did. She also identified a photograph of the van in court.

Dan Miranda also testified at Williams' jury trial. He stated that on the morning of December 1, 2003, Williams had called him to borrow his van, after which Williams stopped by to pick it up. A few hours later, Williams called Miranda at work and told him that the police had his van.

Also at trial, Charles Green testified that on December 1, 2003, Williams and another man picked him up in a white van. After driving for a while, Green stated that Williams and the other man got out of the van and then he heard gunshots. At trial, Green claimed he did not specifically see either man shoot at anyone. Nonetheless, an Assistant State's Attorney testified to Green's

earlier written statement saying Williams shot the victim.  Another Assistant State's Attorney testified as to Green's grand jury testimony.

Police arrested Williams on January 16, 2004 in Country Club Hills, Illinois and transported him back to Chicago Police Area 4 Headquarters.  A police sergeant and detective interviewed Williams several times that day.  At one point, Williams confessed to his role in the murder.  Meanwhile, guns were recovered from the van and forensic evidence confirmed that they were used in the victim's shooting.

After the jury deliberated, they found Williams guilty of first degree murder and also that Williams had personally discharged a firearm in the commission of the offense.  The trial court later sentenced Williams to 40 years for the first-degree murder and 20 years for discharging the firearm.

*Procedural Background*

Williams filed a direct appeal to the Illinois Appellate Court arguing that the admission of Green's statement and the grand jury testimony violated Illinois evidentiary law.  On June 10, 2009, the Illinois Appellate Court affirmed Williams' conviction and sentence.  Williams filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois raising the same arguments.  In September 2009, the Supreme Court of Illinois denied Williams' PLA.

In December 2009, Williams filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*.  In his petition, Williams, by counsel, asserted that his trial counsel provided ineffective assistance of counsel by failing to attempt to quash his warrantless arrest at his home in Country Club Hills.  The trial court dismissed Williams' post-conviction petition at the second stage of the post-conviction proceedings, and, on March 31, 2015, the Illinois Appellate Court affirmed—rejecting the Sixth Amendment ineffective assistance of counsel claim on the merits.  In his post-conviction PLA, Williams made the same ineffective

assistance of counsel argument. The Supreme Court of Illinois denied Williams' PLA in September 2015.

**Legal Standards**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407.

"[A] state prisoner must exhaust his remedies in state court before seeking relief in federal court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). Specifically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files a federal habeas petition. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In doing so, a petitioner must "fairly present his federal claim to the state courts so that they have a 'fair opportunity' to consider and, if needed, correct the constitutional problem." *Schmidt v. Foster*, 911 F.3d 469, 486 (7th Cir. 2018).

4

**Discussion**

On July 20, 2016, Williams filed the present pro se petition for a writ of habeas corpus. Construing Williams' pro se allegations liberally, *see Lund v. United States,* 913 F.3d 665, 669 (7th Cir. 2019), he asserts that: (1) his trial counsel was constitutionally ineffective for failing to move to quash his warrantless arrest at his home; and (2) the admission of Green's written statement and grand jury testimony at trial denied him a fair trial because these statements were inadmissible.

*Sixth Amendment Ineffective Assistance of Counsel Claim*

To establish ineffective assistance of counsel in violation of the Sixth Amendment, Williams must show (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the performance prong, there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Laux v. Zatecky*, 890 F.3d 666, (7th Cir. 2018). Under the *Strickland* prejudice prong, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," rather, Williams must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693, 695. If Williams fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id.*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"); *see also Felton*, 926 F.3d at 464.

In ruling on his post-conviction appeal, the Illinois Appellate Court explained that the trial court dismissed Williams' post-conviction petition at the second stage of his collateral attack, and thus he was required to make a substantial showing of a constitutional violation. With this standard in mind, the Illinois Appellate Court explained:

> In this appeal, defendant contends that he made a substantial showing that counsel provided ineffective assistance by failing to file a motion to quash his arrest. He specifically maintains that his petition shows that he was illegally arrested, that the police did not have a warrant, and that there were no exigent circumstances for a warrantless arrest apparent in either the record or his affidavit. Defendant adds that "it was all the more important that [his] trial counsel file a motion to quash his illegal arrest since there was a reasonable probability that his inculpatory statement would have been suppressed under the fruit of the poisonous tree doctrine, because it flowed directly from his arrest."

*People v. Williams*, 2015 IL App (1st) 130042-U, ¶ 15 (Ill. App. Ct. 2015).

The Illinois Appellate Court clarified that the relevance of Williams' argument was not that his arrest would have been quashed, but rather, the evidence of his later confession should have been suppressed. Applying the *Strickland* prejudice prong, the Illinois court reasoned:

> [H]ad counsel filed and succeeded on the proposed motion to quash his arrest, but failed on a subsequent motion to suppress, the evidence ultimately presented at trial would have been the same. Under those circumstances, there is no reasonable possibility that the outcome of the proceedings would have been different. It therefore follows that, in order to show prejudice from counsel's failure to file a motion to quash his arrest, defendant must make a substantial showing that, not only would the proposed motion have been granted, but that a subsequent suppression motion was meritorious *and* that a reasonable probability exists that the outcome of his trial would have been different had the evidence been suppressed. In this case, we conclude that defendant has not done so.

*Id.* at ¶ 17 (emphasis in original). The Illinois Appellate Court concluded "our examination of the record reveals nothing to show that defendant's statement would have been suppressed, and instead reveals that defendant's statements were made despite repeated *Miranda* warnings, and after significant time passed and intervening events had occurred." *Id.* at ¶ 21. The Illinois Appellate Court further concluded that based on the strong evidence of guilt presented at trial, Williams could not make a showing that the outcome of his trial would have been different had his statements been suppressed. The court discussed the trial evidence, including the four eyewitnesses, the forensic evidence linking the recovered guns to the victim's shooting, and Dan Miranda's testimony about his white van. *Id.* at ¶ 23.

6

Under the circumstances, Williams has not established that the Illinois Appellate Court unreasonably applied the *Strickland* prejudice prong to the facts underlying his ineffective assistance of counsel argument. To be considered objectively unreasonable, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Felton*, 926 F.3d at 464. As the Supreme Court teaches, to be objectively unreasonable, the state court ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.").

In particular, the Illinois Appellate Court applied the proper legal standard, namely, *Strickland*, and discussed in detail the underlying trial evidence when concluding that even if counsel had successfully quashed Williams' arrest and suppressed his inculpatory statements, the outcome of his trial would have been the same based on the abundant evidence of Williams' guilt. The Illinois court also justified its decision by concluding that Williams' statements would not have been suppressed due to the repeated *Miranda* warnings and the circumstances surrounding his statements. Williams cannot show that this decision had no reasonable basis. *See Cullen v. Pinholster*, 563 U.S. 170, 188, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011). Without more, Williams ineffective assistance of counsel argument fails.

*Due Process Right to a Fair Trial*

Next, Williams argues that he was denied his due process right to a fair trial based on the admission of Green's written statement and grand jury testimony. Although Williams asserts that this evidence was admitted as substantive evidence, from the record it is clear that this evidence was presented to impeach Green's contrary in-court statements. In any event, Williams did not present

this constitutional claim to the Illinois courts, but instead argued that the admission of this evidence was impermissible because it bolstered Green's credibility under Illinois law—an argument the Illinois Appellate Court rejected. Accordingly, Williams procedurally defaulted his due process claim.

Even if Williams had not procedurally defaulted his due process argument, any such claim would fail. To clarify, "[t]he remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004); *see also Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("habeas corpus relief does not lie for errors of state law."). Normally, a state court's evidentiary rulings turn on state law, and thus any such rulings are beyond the scope of federal habeas review. *Perruquet,* 390 F.3d at 511. Nonetheless, evidentiary errors can amount to a due process fair trial violation "if the state court committed an error so serious as to render it likely that an innocent person was convicted." *Id.* at 510. Here, the Court would be hard-pressed to conclude that Green's written statement and grand jury testimony—used to impeach his inconsistent in-court statement—resulted in such a grave error. Therefore, Williams' second habeas claim is without merit.

**Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." This Court must determine whether to grant Williams a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). Rather, a habeas petitioner is entitled

to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Williams must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted).

Williams has not established that reasonable jurists would debate that his claim based on Illinois law was not cognizable on habeas review nor that the alleged state court errors amounted to a due process violation. In addition, a reasonable jurist would not conclude that the Court erred in ruling that Williams' ineffective assistance of counsel claim was without merit. As such, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

On a final note, Williams is presently incarcerated at Pickneyville Correctional Center, and therefore, the proper Respondent is Scott Thompson, Acting Warden. *See* Fed.R.Civ.P. 25(d).

**Conclusion**

For these reasons, the Court denies Petitioner's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

SO ORDERED.

Sharon Johnson Coleman
United States District Judge

DATED: 8/26/2019

9